CANDEE *v.* SIXTY-EIGHT BALES COTTON.[1]

*(District Court, S. D. Alabama.* March 9, 1891.)

1. SALVAGE—WHEN ALLOWED.
    Salvage is allowed as a reward for the benefit conferred on the person whose property is saved.

2. SAME—RATE.
    There is no rule governing absolutely the rate of salvage, but, when the property is derelict, *it seems* at least one-third of the value of the property saved may be allowed.

3. SAME—PASSENGERS AS SALVORS.
    A passenger is entitled to salvage when his services are extraordinary.

4. SAME.
    When mariners left in charge of cargo, necessarily thrown overboard, desert their post, and a passenger, by persuasion and rewards, induces them to return, and successfully directs them in the rescue of the cargo with the ship's appliances, he is entitled to salvage, but not to the extent of the full value of the service rendered by all.

In Admiralty. Libel for salvage.

The steam-boat Anderson, while coming down the Mobile river, had a part of the cargo, consisting of cotton in bales, to catch fire. An effort was made by the officers and crew of the vessel to extinguish the fire while the cotton was still on board. Being unsuccessful the master had the burning bales thrown overboard into the river, and ordered one of his officers and five or six members of his crew to take to the small boats, with proper appliances, and to endeavor to save the cotton from burning, and to secure and keep it until he could go with his steamer to Mobile, (some 20 miles distant,) and send up a tug-boat for it. The steam-boat went on without delay to Mobile. The libelant was at the time a passenger on said steam-boat. He voluntarily left the boat, abandoned for the time his trip to Mobile, and, with the crew left by the master, joined in the effort to save the cotton. Most of the cotton was saved, but some of it in a damaged condition.

*M. D. Wickersham* and *Pillans, Torrey & Hanaw,* for libelant.

*Overall & Bestor,* for respondent.

TOULMIN, J. The general principle is that salvage is only payable where a meritorious service has been rendered. It is allowed as a reward for the meritorious conduct of the salvor, and in consideration of a benefit conferred on the person whose property he has saved. There is no positive rule which governs absolutely the rate of salvage. In this case if the cotton had been derelict,—that is, had been deserted or abandoned by the vessel,—and it had been saved as set forth in the libel, I would award at least one-third—perhaps more—of its value as salvage. But I find from the proof that the cotton was not derelict,—was not abandoned,—but that the master of the vessel left an officer and six members of his crew to secure and preserve it until he could go to Mobile, and return or send for it. If this officer and these men had diligently and faithfully

[1] Reported by Peter J. Hamilton, Esq., of the Mobile bar.

performed their duty under their obligations to the boat and cargo, the services of the libelant would have been unnecessary. But it appears from the proof that one-half of the crew left by the master to perform the salvage service were about to desert their post of duty. They proposed to abandon their trust and to leave the work undone, so far as they were concerned. Here the efficiency and value of libelant's services came in, and his superior intelligence, will power, and energy were displayed. It appears from the proof that he induced these men to remain and continue in the work, and proposed to pay them $3 apiece if they would do so. They did continue, and under his directions worked to save the cotton, (which it was their duty to do,) and he paid them the amount agreed on. The libelant's advice and direction must have constituted the chief merit of his service in the work actually done, as he had no appliances with which to do the work other than those furnished by the boat, and which were in the possession and charge of the boat's crew left for the purpose. The libelant states in his libel that he got a boat from the bank, and hired four men at $5 apiece to perform the service, and that he with them saved the 68 bales of cotton. From the allegations of the libel, it would be inferred that the libelant had hired four men disconnected with the boat, and under no obligations to the vessel and cargo, to aid him in the work. If this was the proof I would at least allow $6 a bale as salvage, which I consider a fair award for the whole service rendered, although the cotton was not derelict. The proof shows that the service was rendered by the boat's crew, with its appliances, in conjunction with the libelant, but it also shows that he mainly bossed the undertaking, and generously rewarded some of the men for performing their duty in the matter. It is sufficient to entitle the salvor to a just compensation that a beneficial service has been rendered; it is only in estimating the quantum of compensation that the motives by which he was actuated should be taken into account. The libelant in this case has rendered beneficial service. But, under the circumstances of the case, I do not consider him entitled to the full value of the service rendered by all engaged in it, but that he is entitled to a large proportion of it. Although a passenger, he is entitled to salvage. His services were extraordinary. *The Brabo,* 33 Fed. Rep. 884. But I consider $200 ample compensation for the services rendered by him; and such will be the decree.